UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
KEITH NIEMIC,                  )
                               )
          Plaintiff,           )
                               )
          v.                   )      CIVIL ACTION
                               )      NO. 13-11402-WGY
UMASS CORRECTIONAL HEALTH,     )
THOMAS HICKS,JR.,              )
GERALDINE SOMERS,              )
AYSHA HAMEED,                  )
BART NELSON,                   )
MARK SCHNABEL,                 )
CARMEN NEWRY, and              )
THOMAS GROBLEWSKI,             )
                               )
                               )
          Defendants.          )
_____)
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    March 2, 2015

## I.  INTRODUCTION

Keith Niemic ("Niemic") brings this suit pro se against

UMass Correctional Health ("UMCH"), Thomas Hicks ("Hicks"),

Geraldine Somers ("Somers"), Aysha Hameed ("Hameed"), Bart

Nelson ("Nelson"), Mark Schnabel ("Schnabel"), Carmen Newry

("Newry"), and Thomas Groblewski ("Groblewski")[1] (collectively,

the "Medical Defendants") seeking injunctive relief and damages

_____

[1] As discussed below, Niemic originally named fifteen
defendants.  The named defendants are the only ones left in the
case at this point.

1

for alleged violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution under 42 U.S.C. section 1983, and Massachusetts General Laws Chapter 12, section 11I.[2] Niemic, an inmate incarcerated at the Souza-Baranowski Correctional Center, asserts that the Medical Defendants were deliberately indifferent to his serious medical needs and committed other constitutional violations during the course of his medical treatment.

The Medical Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because Niemic cannot demonstrate that the Medical Defendants were deliberately indifferent to his serious medical needs or violated his constitutional rights, this Court GRANTS the motion.

**A. Procedural Posture**

Niemic filed his initial complaint on June 3, 2013, Compl., ECF No. 1, and he filed an amended complaint on August 26, 2013, Am. Compl., ECF No. 42. On August 5, 2013, Niemic moved for a temporary restraining order and preliminary injunction. Mot. TRO & Prelim. Inj., ECF No. 14. Judge Tauro denied the motion on September 9, 2013, holding that Niemic failed to provide sufficient evidence to show that the Medical Defendants were

---

[2] Niemic also asserts claims against all defendants under Mass. Gen. Laws ch. 102, § 93, see, e.g., Statement Disputed Facts Affidavit Form ¶ 19, ECF No. 150, but no such statute exists.

deliberately indifferent to his serious medical needs and that he failed to "demonstrate a likelihood of success on the merits." Order, ECF No. 49.

UMCH filed a motion to dismiss August 26, 2013. Def. UMass Correctional Health's Mot. Dismiss, ECF No. 37. Additionally, defendants Johanna Shaw ("Shaw"); the Massachusetts Department of Correction, Bruce Gelb, Luis Spencer, and Lawrence Weiner (collectively, the "Corrections Defendants"); and Massachusetts Partnership for Correctional Health ("Partnership") filed motions to dismiss and motions for summary judgment on September 16, 2013, Def. Johanna Shaw, M.D.'s Mot. Dismissal & Summ. J. Re: Pl. Keith Niemic's Compl., ECF No. 53, November 22, 2013, Defs. Mot. Dismiss Or Alternative, Mot. Summ. J., ECF No. 67, and November 26, 2013, Def. Mass. P'ship Correctional Healthcare's Mot. Dismiss, Or, Alternatively, Mot. Summ. J. Pl. Keith Niemic's Am. Compl., ECF No. 69, respectively.[3]

---

[3] Magistrate Judge Collings's order dated January 10, 2014, directed Shaw and the Corrections Defendants, who filed motions seeking dismissal and summary judgment simultaneously, to re-file those motions and memoranda as motions to dismiss only. Elec. Order, ECF No. 83. Shaw re-filed her motion to dismiss January 16, 2014. Def. Johanna Shaw, M.D.'s Mot. Dismiss Pl. Keith Niemic's Compl., ECF No. 84. That same day, Partnership filed its motion to dismiss Niemic's amended complaint. Def. Mass. P'Ship Correctional Healthcare's Mot. Dismiss Pl. Keith Niemic's Am. Compl., ECF No. 86. The Corrections Defendants re-filed their motion to dismiss on February 26, 2014. Defs. Mass. Dep't Correction, Comm'r Luis S. Spencer, Bruce Gelb & Lawrence Weiner's Mot. Dismiss, ECF No. 119.

Niemic attempted to certify a class action on July 22,
2013, Pl.'s Mot. Class Action Certification, ECF No. 12.  On
February 19, 2014, that motion was denied.  Order ("February
2014 Order") ¶ 1, ECF No. 115.  That same day, Judge Tauro
accepted and adopted Magistrate Judge Collings's Report and
Recommendation dated January 29, 2014, ECF No. 108, granting
UMCH's motion to dismiss with respect to all claims asserted
under 42 U.S.C. section 1983, and denying the motion without
prejudice as to all other remaining claims, February 2014 Order
¶ 3.  Additionally, on March 25, 2014, Judge Tauro allowed the
motions to dismiss filed by Shaw, Partnership, and the
Corrections Defendants and dismissed Niemic's Rehabilitation Act
and ADA claims against all remaining defendants.  Order ¶¶ 1-3,
7, ECF No. 122.

The case was reassigned to this session of the Court on May
20, 2014.  Elec. Order, ECF No. 131.  Two days later, the
Medical Defendants filed the instant motion for summary
judgment.  Defs. UMass Correctional Health, Thomas Hicks,
Geraldine Somers, Aysha Hameed, Bart Nelson, Mark Schnabel,
Carmen Newry, & Thomas Groblewski's Mot. Summ. J., ECF No. 134;
Defs. UMass Correctional Health, Thomas Hicks, Geraldine Somers,
Aysha Hameed, Bart Nelson, Mark Schnabel, Carmen Newry, & Thomas
Groblewski's Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No.
135; Defs. UMass Correctional Health, Thomas Hicks, Geraldine

Somers, Aysha Hameed, Bart Nelson, Mark Schnabel, Carmen Newry, & Thomas Groblewski's Statement Undisputed Facts Supp. Mot. Summ. J. ("Defs.' Undisputed Facts"), ECF No. 136. Niemic filed his opposition on August 11, 2014. Pl.'s Opp'n UMCH Defs.' Mot. Summ. J., ECF No. 148; Pl. Keith Niemic's Mem. Supp. Opposing Mot. Summ. J. ("Niemic's Mem."), ECF No. 149. The only remaining claim against UMCH is the state law claim, and the remaining claims against the Medical Defendants are the constitutional claims under 42 U.S.C. section 1983 and the state law claim. See Niemic's Disputed Facts ¶¶ 19-20.

**B. Undisputed Facts**

Niemic is an inmate currently incarcerated at Souza-Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts. Id. ¶ 1. This case arises out of Niemic's ongoing medical treatment for a variety of ailments, including severe back pain, migraine headaches, and Hepatitis B and C. See Am. Compl. ¶¶ 14-16, 18. Thomas Groblewski is the former Regional Medical Director of UMCH. Niemic's Disputed Facts ¶ 2. Bart Nelson and Mark Schnabel are nurse practitioners, Carmen Newry is a nurse, and Aysha Hameed, Geraldine Somers, and Thomas Hicks are physicians, all former employees of UMCH.[4] Id. ¶¶ 3-8.

---

[4] All individually named Medical Defendants are former employees of UMCH because UMCH is no longer the medical provider for the Department of Correction as of July 1, 2013. Defs. Mass. Dep't Correction, Comm'r Luis S. Spencer, Bruce Gelb, &

UMCH is a state agency and is the former medical provider for the Massachusetts Department of Corrections.  Defs.' Undisputed Facts ¶ 9.

In June 2005, following an altercation with another inmate, Niemic severely injured his back, resulting in the herniation of his L4-L5 disc.  Pl.'s List Exhibits ("Pl.'s Exhibits"), Ex. B at 3, ECF No. 151.[5]  His doctors recommended surgery after failed epidural steroid injections, but Niemic did not have surgery at that time.  Defs.' Undisputed Facts, Ex. A at 1, ECF No. 136.[6] There is some dispute as to why Niemic did not receive surgery: evidence provided by both parties suggests that Niemic himself declined the surgery, id.; Pl.'s Exhibits, Ex. B at 10, but Niemic has also provided a form filed in 2007 requesting that he receive back surgery, Pl.'s Exhibits, Ex. C at 3.  Niemic also provides a report filed by a non-party physician from 2007,

---

Lawrence Weiner's Mem. Supp. Their Mot. Dismiss or Alternative Mot. Summ. J. 3, ECF No. 68.

[5] Niemic offers twenty-two exhibits to support his opposition to the motion for summary judgment.  To improve the readability of the opinion, ECF docket numbers for each exhibit will not appear after each reference; it suffices to state here that Niemic's Exhibits A through U appear at ECH No. 151-2 through 151-22.

[6] Though the Medical Defendants attached twenty exhibits to their statement of undisputed facts, the exhibits are grouped together under three docket numbers.  Exhibits A through F and part of Exhibit G are at ECF No. 136-1, the remainder of Exhibit G is at ECF No. 136-2, and Exhibits H through T are at ECF No. 136-3.

however, stating (1) that his injury appeared to have resolved and was having no affect on his daily activities, and (2) that Niemic had a history of narcotic-seeking behavior.  Pl.'s Exhibits, Ex. G at 3.

As a result of his back injury, Niemic suffered falling episodes on May 14, May 28, June 25, September 1, and November 18, 2009.  See Niemic's Disputed Facts ¶¶ 21-25.  Only the May 28 fall resulted in a trip to the emergency room, as he suffered a head injury that required staples.  Id. ¶ 22.  Ultimately, on January 26, 2010, Niemic underwent neurosurgery at Tufts Medical Center, Defs.' Undisputed Facts, Ex. B at 1, despite the surgeon's warnings that surgery might not fully resolve the issue "given that this has been a chronic problem for the past four years . . . and that the nerve might have sustained permanent damage," Pl.'s Exhibits, Ex. B at 8.  After the surgery, Niemic was prescribed several medications, including Neurontin, methadone, and oxycodone.  Defs.' Undisputed Facts, Ex. B at 2.

Upon postoperative examination, Niemic's right leg pain had improved considerably and he had increased sensation in both feet.  Id.  Niemic returned to SBCC on January 27, 2010 and was provided with a mix of oxycodone and methadone, until a higher dosage of methadone capable of replacing the oxycodone became available.  Id.; Defs.' Undisputed Facts, Ex. G at Bates 90-92.

Three days later, Niemic was released back to his cell upon his request, after he agreed that his oxycodone would be discontinued and he would be maintained on methadone. <u>See</u> Defs.' Undisputed Facts, Ex. C at 1. Niemic was evaluated by a nurse practitioner on February 27, 2010, in response to sick slips submitted on February 12 and 14 complaining of unbearable back pain. <u>See</u> Pl.'s Exhibits, Ex. H at 2-3. Although Niemic said in his February 14 sick slip that he was contemplating suicide because of the pain, prison staff discussed the issue with Niemic and noted that he did not plan to hurt himself at the present time, but just wanted to be seen by a doctor. <u>Id.</u> at 3.

On March 11, 2010, Niemic refused his initial follow up with his neurosurgeon due to intense pain. Niemic's Disputed Facts ¶ 64; Defs.' Undisputed Facts, Ex. E at 1. His methadone prescription was discontinued on March 24, 2010, as a result of suspected medication hoarding in his cell.[7] <u>See</u> Pl.'s Exhibits, Ex. J at 6, 15; Defs.' Undisputed Facts, Ex. F at 1. That evening, Niemic attempted suicide and was hospitalized and later monitored in a suicide isolation cell for several days. <u>See</u> Niemic's Disputed Facts ¶ 67.

---

[7] Niemic's guilty finding upon this administrative charge was later vacated in the Massachusetts Superior Court. <u>Niemic</u> v. <u>Dickhaut</u>, No. MICV2010-04463-L2 (Mass. Super. Ct. 2010).

Niemic continued to complain of severe pain and was thereafter given two pain relievers, Clonidine and Neurotin, as well as Baclofen, a muscle relaxant. Defs.' Undisputed Facts, Ex. G at Bates 86-87. Niemic submitted several sick slips after his methadone was discontinued, complaining of withdrawal, gastrointestinal issues, and severe pain. See Niemic's Disputed Facts ¶ 68. On April 13, 2010, Niemic was prescribed Motrin for daily use, and on April 24, 2010, that prescription was increased to address his severe pain, although he was not prescribed methadone as he requested. See Defs.' Undisputed Facts, Ex. G at Bates 374-77.

Niemic attended a follow up with his neurosurgeon on April 15, 2010, and complained that the surgery had not resolved his pain issues. See Defs.' Undisputed Facts, Ex. H at 1. The surgeon was unsure why Niemic did not benefit from the surgery, noting that he could be suffering from permanent nerve damage or that there could be issues of secondary pain involved. Id. He did conclude, however, that he had no further options to address Niemic's pain management issues. Id.

Soon thereafter, on April 24, 2010, Niemic was advised by a nurse practitioner that she would continue to monitor his pain, but he would not likely receive narcotic pain medication prospectively due to his disciplinary report and concerns for his safety following his recent suicide attempt. Pl.'s

Exhibits, Ex. J at 4-5.  Another nurse practitioner also noted
that Niemic was upset because his neurosurgeon suggested that
his pain might be psychological rather than physical.  Id. at 3.

Niemic regularly submitted sick slips complaining of back
and liver pain between May and August 2010, but after examining
him on August 18, 2010, Dr. Hameed concluded that his chronic
illnesses were stable and that his back pain was being managed
with Neurontin.  Pl.'s Exhibits, Ex. K at 8.  Dr. Hameed also
noted Niemic's medication-seeking behavior and declined to
increase his Neurontin.  Id.  Niemic was maintained on Neurontin
until November 28, 2011, when Dr. Hameed ordered for the
medication to be tapered off.  See Defs.' Undisputed Facts, Ex.
L at 1.  The medication was ultimately discontinued on April 20,
2012.  Defs.' Undisputed Facts ¶ 58.

Despite Niemic's regular submission of sick slips, at his
chronic illness evaluation on July 7, 2011, he was found to have
no issues.  See Defs.' Undisputed Facts, Ex. K at 1.  Niemic was
prescribed a nasal spray and Claritin to address his headaches
and congestion, although he regularly suggested that he may have
a brain tumor and requested an outside consultation.  See Defs.'
Undisputed Facts ¶ 56; Niemic's Disputed Facts ¶ 80.  On May 3,
2012, in response to numerous sick slips, Niemic was evaluated
by nurse practitioner Schnabel, who prescribed Robaxin, a muscle

relaxant, to address his back pain.  <u>See</u> Pl.'s Exhibits, Ex. L
at 2-3.

Niemic suffered another fall requiring outside medical
treatment on June 9, 2012.  Pl.'s Exhibits, Ex. M at 5.  Dr.
Somers prescribed oxycodone on June 22, 2012, to further address
Niemic's chronic back pain.  Pl.'s Exhibits, Ex. N at 4-5.  Dr.
Somers ordered for the oxycodone to be tapered and ultimately
discontinued on August 7, 2012.  Pl.'s Exhibits, Ex. P at 5-6;
Defs.' Undisputed Facts ¶ 61.  Dr. Somers also recommended
physical therapy and discussed further surgery to treat his
pain, but Niemic refused to participate in physical therapy
without additional pain medication.  Pl.'s Exhibits, Ex. P at 5.
Thereafter, Niemic was provided with Tylenol, Tegretol (a nerve
pain medication), and Excedrin to address his pain.  Defs.'
Undisputed Facts ¶ 68.  Niemic filed medical grievances against
defendant nurse Newry on July 18, 2012 and on September 18,
2012, but each was denied.  Pl.'s Exhibits, Ex. R at 6-8.

On September 7, 2012, Niemic suffered another fall and
injured his shoulder.  <u>Id.</u> at 3.  Niemic underwent an X-ray on
October 12, 2012, which showed no fractures or abnormalities,
despite his frequent sick slips complaining of shoulder pain.
Defs.' Undisputed Facts, Ex. R at 1.  Between January and May
2013, Niemic was scheduled for five physical therapy
appointments to address his pain, but he participated only in

three appointments, and the therapist determined that he had reached his maximum rehabilitation potential on May 15, 2013. See Defs.' Undisputed Facts, Ex. Q at 1-5.

Niemic filed two medical grievances against nurse practitioner Nelson in January and August 2013. See Pl.'s Exhibits, Ex. S at 5-6. On January 25, 2013, he alleged that Nelson refused to provide him with effective pain medication to address his chronic pain. Id. at 5. On August 21, 2013, he alleged that Nelson denied his request for diagnostic tests for his suspected tumor and chronic back and shoulder pain. Id. at 6. D.J. Hager ("Hager"), the Health Services Administrator replied to Niemic's medical grievances against Nelson and each time Hager backed up Nelson's treatment decisions. Id. at 2.

Niemic frequently submitted sick slips complaining of a lump on the back of his head, as he was worried that he had a brain tumor. See Pl.'s Exhibits, Ex. T at 2. On June 19, 2013, Nelson examined the lump on Niemic's head and referred him to an outside surgical clinic for evaluation. See id. at 3. UMCH ceased operation as the Department of Corrections' medical provider on July 1, 2013. Defs. Mass. Dep't Correction, Comm'r Luis S. Spencer, Bruce Gelb, & Lawrence Weiner's Mem. Supp. Their Mot. Dismiss or Alternative Mot. Summ. J. 3, ECF No. 68.

## II. ANALYSIS

### A. Summary Judgment Standard

This Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985).

The party seeking summary judgment bears the initial burden of bringing forth evidence to demonstrate "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may show the absence of material factual disputes based on the materials in the record, including depositions, documents, and affidavits.  Fed. R. Civ. P. 56(c).  Summary judgment must be granted if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

Once the moving party has sufficiently established that there are no issues of material fact, the burden of production shifts to the non-moving party, as "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial,'" and he may not rest on the "mere allegations or denials of his pleadings."  Anderson, 477 U.S. at 248, 250 (quoting Fed.

13

R. Civ. P. 56).  The Court must take the non-movant's evidence as true, and "all justifiable inferences are to be drawn in his favor."  Id. at 255.

**B.   Eighth Amendment: Cruel and Unusual Punishment**

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  Although the Constitution does not mandate comfortable prisons, it is well settled that it does not permit inhumane prisons. Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment protects prisoners from punishments that "involve the unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  "The Amendment also imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

**1.   Deliberate Indifference to a Serious Medical Need**

It is the government's obligation to provide medical care to those whom it punishes with incarceration.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  In Estelle v. Gamble, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and

wanton infliction of pain, proscribed by the Eighth Amendment."
Id. at 104 (internal citation and quotation marks omitted).
The Court reasoned that because prisoners must rely on prison
officials for medical treatment, failure to provide that
treatment may result in pain and suffering that cannot serve any
legitimate penological purpose. Id. at 103. The Court further
explained that deliberate indifference may be manifested by a
prison doctor's inadequate treatment of a prisoner, or by prison
guards who intentionally delay or deny a prisoner access to
medical treatment or interfere with medical treatment once it is
prescribed. Id. at 104.

Of course, not every denial or delay of medical treatment
rises to the level of deliberate indifference. The Estelle
Court "established that an Eighth Amendment claim of 'cruel and
unusual punishment' based on medical mistreatment requires more
than 'an inadvertent failure to provide adequate medical care'
and must involve 'acts or omissions sufficiently harmful to
evidence deliberate indifference to serious medical needs.'"
Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161-62 (1st
Cir. 2006) (quoting Estelle, 429 U.S. at 105-06). A prisoner's
allegations must satisfy both the objective and subjective
prongs of the resulting test. First, the deprivation must be
"objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834
(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second,

the prison official must have a "sufficiently culpable state of mind." Id.

Negligence in treating or diagnosing a medical condition is insufficient to prove a constitutional violation. Estelle, 429 U.S. at 106. Additionally, in the First Circuit, when a plaintiff's "allegations simply reflect a disagreement on the appropriate course of treatment[,] [s]uch a dispute with an exercise of professional judgment may present a colorable claim for negligence, but falls short of alleging a constitutional violation." Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980). Furthermore, in order to qualify as a constitutional violation, the medical care provided must have been "so inadequate as to shock the conscience." Feeney, 464 F.3d at 162 (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir.1991)) (internal quotation marks omitted). Alternatively, a violation could consist of "an omission so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred." Torraco, 923 F.2d at 234 (internal quotation marks omitted).

### a.    Dr. Hameed

Niemic alleges that Dr. Hameed engaged in a pattern of ignoring or failing adequately to treat Niemic's chronic back pain and headaches, including failure to carry out proper diagnostic tests, failure to provide effective pain medication,

failure to provide access to outside medical professionals, discontinuation of narcotic pain medication, and prescribing hepatotoxic pain relievers, all of which constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Am. Compl. ¶¶ 139-145; Niemic's Mem. 18.[8] Niemic asserts that Dr. Hameed failed adequately to treat his severe pain due to his disciplinary history and his perceived drug-seeking behavior. Id. He further alleges that Dr. Hameed's persistence in ineffective courses of treatment and her refusal to refer him to outside specialists rise to the level of a constitutional violation. Id.

In order to show that Dr. Hameed was deliberately indifferent to his serious medical needs, Niemic must allege acts or omissions that are sufficient to evidence a constitutional deprivation. Estelle, 429 U.S. at 106. In Estelle v. Gamble, Gamble was seen by medical personnel seventeen times during a three-month period. Id. at 107. The

---

[8] Dr. Hameed alleges that Niemic's claim against her are barred by the statute of limitations. Dr. Hameed asserts that Niemic's sole claim against her stems from an incident occurring on May 13, 2009. Defs.' Mem. 6. The statute of limitations for a 42 U.S.C. § 1983 action is three years. See Duffy v. Mass. Dep't of Corrections, 746 F. Supp 232 (D. Mass. 1990). Although Niemic may have included specific allegations stemming from the May 2009 incident in some court documents, neither Niemic's amended complaint nor his opposition includes specific claims referring to this incident. See Niemic's Mem.; Am. Compl. Accordingly, the Court rejects Dr. Hameed's statute of limitations argument.

Court noted that although more could have been done to diagnose Gamble's back pain, including taking an X-ray or other diagnostic tests, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." Id.

Here, over the course of the past several years, Niemic has been treated by Dr. Hameed on numerous occasions where she has prescribed narcotic pain medication in response to his severe pain, in addition to non-narcotic medications. See, e.g., Defs.' Undisputed Facts, Ex. G, L. Although Dr. Hameed did not always prescribe Niemic's preferred medication, Dr. Hameed consistently provided him with pain medication. See id. at Ex. G (noting pain medication prescription dosages). Dr. Hameed's decision to prescribe non-narcotic pain medication in light of Niemic's substance abuse issues does not rise to the level of deliberate indifference necessary to be deemed a violation of the Eighth Amendment. Feeney, 464 F.3d at 162 (reasoning that medical care must be so inadequate as to "shock the conscience"). Furthermore, Niemic's chronic care evaluations consistently have shown that his hepatitis B and C are well managed and his most recent liver function tests were normal, see, e.g., Defs.' Undisputed Facts, Ex. S at 1 (showing that

liver function was normal in April 2013, near the end of the time period Niemic was treated by the defendants), despite his claims that the non-narcotic hepatotoxic pain medications damaged his liver.

Additionally, Dr. Hameed's decision not to refer Niemic to an outside specialist or to perform certain diagnostic tests rests firmly within her medical discretion. See Estelle, 429 U.S. at 106. It is well settled that a patient's disagreement or dissatisfaction with the prescribed course of treatment is insufficient to prove a constitutional deprivation. Ferranti, 618 F.2d at 891.

Consequently, Niemic has failed to provide sufficient evidence to support a finding that Dr. Hameed's medical treatment was so inadequate as to constitute a constitutional deprivation. Estelle, 429 U.S. at 106. Thus, Dr. Hameed is entitled to judgment as matter of law.

### b. Dr. Hicks

Niemic asserts that Dr. Hicks engaged in behavior that constitutes deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Am. Compl. ¶¶ 139-145. Specifically, Niemic alleges that Dr. Hicks prescribed effective narcotic pain medication and then subsequently discontinued the prescription in response to Niemic's disciplinary report. See Niemic's Mem. 19-21. Again, Niemic

fails to proffer evidence sufficient to show a constitutional deprivation. See Estelle, 429 U.S. at 106.

Niemic's medical records belie his allegations that Dr. Hicks arbitrarily discontinued his pain medication. Before his surgery in January 2010, Niemic was maintained on 5 mg of methadone, three times a day. See Defs.' Undisputed Facts, Ex. G at Bates 90. After he returned from Tufts Medical Center, Niemic was prescribed a supplemental dosage of oxycodone until a higher dosage of methadone became available to address his severe pain. Defs.' Undisputed Facts, Ex. B at 2, Ex. G at Bates 90-92. Before Niemic was transferred from the infirmary to his cell on January 30, 2010, at his request, he agreed to discontinue the oxycodone. Defs.' Undisputed Facts, Ex. C at 1. On February 2, 2010, Niemic was prescribed an additional 10 mg daily dosage of methadone, as previously contemplated by his medical team. Defs.' Undisputed Facts, Ex. G at Bates 89. Niemic received a disciplinary report on March 24, 2010, for suspected drug hoarding, and a nonparty nurse practitioner subsequently discontinued his methadone prescription. Defs.' Undisputed Facts, Ex. F at 1. Niemic has failed to provide any evidence that suggests that Dr. Hicks had anything to do with the discontinuation of his methadone prescription. Additionally, he has failed to show that the discontinuation was

a sufficient constitutional deprivation.  Thus, Dr. Hicks is entitled to judgment as matter of law.

### c.  **Nurse Newry**

Niemic alleges that nurse Newry refused to treat his immediate medical needs, influenced a doctor's prescription decisions, and delayed or prevented him from receiving medical attention.  See Niemic's Mem. 21-22.  On several consecutive days in September 2012, Niemic asserts that Newry refused to give him aspirin after he complained of chest pains during medication rounds.  Pl.'s Exhibits, Ex. R at 2.  Newry explained to Niemic that he must submit a sick slip in order to receive medication.  Id. at 8.  Despite this explanation, Niemic filed three medical grievances against Newry regarding this issue. Id. at 6-8.  Each time Niemic was notified that his issues were not grievable and that he must go through the proper channels to request changes in his medication.  Id.  As the Court views it, this evidence is indicative of Niemic's mere disagreement with his course of treatment, rather than a constitutional deprivation sufficient to prove deliberate indifference.  See Estelle, 429 U.S. at 106.

Niemic also alleges that Newry improperly influenced Dr. Somers to discontinue Niemic's oxycodone prescription on August 7, 2012, as retaliation for his frequent medical grievances and sick slips.  Niemic's Mem. 21; Pl.'s Exhibits, Ex. P at 5-6.  In

<u>Feeney</u> v. <u>Correctional Medical Services, Inc.</u>, the court noted that "deliberate indifference may also reside in 'wanton' decisions to deny or delay care, where the action is recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'" <u>Feeney</u>, 464 F.3d at 162 (quoting <u>Watson</u> v. <u>Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993)).

Here, Niemic fails to show a sufficient denial or delay of medical care. Although Dr. Somers did, in fact, discontinue Niemic's oxycodone, his medical records suggest that this medical decision was precipitated by Dr. Somers's concern for Niemic's narcotic dependence, as he refused to consider further surgery or physical therapy without an increased dosage of narcotic pain medication. Pl.'s Exhibits, Ex. P at 5-6. Niemic offers an affidavit from a fellow inmate, asserting that he heard Newry request that Dr. Somers discontinue Niemic's narcotic medication, to support his allegation that Newry improperly influenced Dr. Somers's decision. Pls.' Exhibits, Ex. O at 2. Ultimately, even resolving all inferences in Niemic's favor, the evidence merely shows that Newry made a medical suggestion to Dr. Somers, nothing more. This evidence is insufficient to show that Newry's actions rose to the level of a wanton or reckless decision to deny or delay care. <u>See</u> <u>Feeney</u>, 464 F.3d at 162.

Finally, Niemic asserts that Newry denied him access to medical treatment by refusing him sick slips on several occasions in September 2012.  Pl.'s Exhibits, Ex. R at 2, 4-5.  Again, Niemic's allegations fail to rise to the level of a sufficient deprivation.  Niemic filed sick slips on three consecutive days in early September.  See id. at 3-5.  Although nurse Newry wrote "Refused" on sick slips dated September 8 and 9, the sick slip dated September 7, 2012 had extensive notes, including an appointment with the nurse practitioner scheduled for the next month.  Id.  Even were this Court were to find that this conduct is a sufficient deprivation, Niemic still cannot satisfy the subjective prong of the test.  See Feeney, 464 F.3d at 162.  Niemic's sick slips did not assert emergency or life threatening symptoms and he was scheduled to see the nurse practitioner soon thereafter.  At worst, Newry's conduct was insensitive and possibly negligent, but it does not rise to the level of a constitutional deprivation.  Thus, Newry is entitled to judgment as matter of law.

### d.  Nurse Practitioner Schnabel

Niemic asserts that Schnabel failed to provide effective pain medication during an examination on May 3, 2012 and that Schnabel knowingly and fraudulently recorded that he could ambulate in the cell block without problems.  Am. Compl. ¶¶ 64-65.  He further alleges that Schnabel prevented his access to

outside medical specialists to treat migraine headaches and a lump on his head that he suspects is a tumor.  Niemic's Mem. 22-23.

In the First Circuit, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)) (alteration in original) (internal quotation marks omitted).  Again, Niemic's medical records belie his allegations.  During Niemic's examination, Schnabel prescribed Robaxin, a muscle relaxant, to address Niemic's back pain.  Pl.'s Exhibits, Ex. L at 3.  Additionally, Schnabel discussed pain management options pursuant to pain management guidelines, but Niemic declined to pursue those options.  Id. at 4.  Furthermore, although Niemic reported that his back pain was so severe that he could not sit for the examination, Schnabel noted in Progress Notes from the same date that correctional staff members reported that Niemic could walk about with ease while he was in the cell block.  Id.  Schnabel's treatment of Niemic was reasonable in light of this observation, combined with Niemic's disciplinary report history and history of drug-seeking behavior.  See Layne, 657 F.2d at 474.

Niemic also alleges that Schnabel refused to provide him with outside medical attention to address the lump on the back of his skull and migraine headaches. Niemic's Mem. 23. As stated above, courts generally decline to second-guess medical judgments. Layne, 657 F.2d at 474. Additionally, while the First Circuit is hesitant to find deliberate indifference "[w]here the dispute concerns not absence of help, but the choice of a certain course of treatment, deliberate indifference may be found where the attention received is so clearly inadequate as to amount to a refusal to provide essential care." Torraco, 923 F.2d at 234 (internal citation and quotation marks omitted).

Here, despite Niemic's frequent submission of sick slips requesting an MRI or other diagnostic tests to address the lump on his head, his medical team declined to order additional tests or refer Niemic to an outside specialist. See Niemic's Mem. 23. Niemic opines that Schnabel refused to refer Niemic to an outside specialist or order diagnostic tests in order to save money and due to Niemic's history of disciplinary reports and drug addiction. Id. Niemic, however, failed to provide evidence corroborating his claims, and bare conjecture cannot suffice to bar entry of summary judgment in favor of the defendants here. Moreover, Niemic's medical records contradict his allegations. He was routinely prescribed Claritin and nasal

sprays to address his headaches, see Defs.' Undisputed Facts,
Ex. G, and his back surgery evidences the Medical Defendants'
willingness to provide expensive treatments outside of the
prison. See Defs.' Undisputed Facts, Ex. B at 1-2. As
mentioned above, this Court declines to second-guess nurse
practitioner Schnabel's medical judgment without sufficient
evidence that Niemic's medical treatment was "so clearly
inadequate as to amount to a refusal to provide essential care."
Torraco, 923 F.2d at 234. Niemic has failed to meet this heavy
burden, and, as such, Schnabel is entitled to judgment as matter
of law.

### e. Nurse Practitioner Nelson

Niemic alleges that nurse practitioner Nelson delayed
treatment of his injured shoulder and then subsequently refused
to provide him with the prescribed pain medication. See
Niemic's Mem. 24-25. Again, Niemic's medical records belie his
claims against Nelson. After his fall in September 2012, Niemic
received an X-ray that showed no abnormalities. Defs.'
Undisputed Facts, Ex. R at 1. Additionally, in early 2013
Niemic was provided with several pain medications, including
Tegretol, Motrin, and Excedrin, Defs.' Undisputed Facts, Ex. G,
and participated in three physical therapy appointments before
the therapist determined that he had reached his maximum
rehabilitation potential. Defs.' Undisputed Facts, Ex. Q at 1-

5.  Despite this medical treatment, Niemic filed two grievances against Nelson regarding his course of treatment.  Pl.'s Exhibits, Ex. S at 5-6.  Each time, Hager, the prison Health Services Administrator, declined to second-guess Nelson's medical decisions.  Id. at 2.  A patient's dissatisfaction or disagreement with a course of treatment is insufficient to prove a deprivation sufficient to show deliberate indifference.  Ferranti, 618 F.2d at 891.  Niemic cannot show a sufficient deprivation and therefore Nelson is entitled to judgment as matter of law.

### f.  Dr. Somers

Niemic asserts that Dr. Somers refused to refer him to a specialist for his many medical concerns (e.g., back pain, shoulder pain, and suspected tumor) and failed to order diagnostic tests effectively to treat him.  See Niemic's Mem. 26.  He further argues that Dr. Somers abruptly discontinued his oxycodone prescription without tapering, resulting in opioid withdrawal.  Id.  He also alleges that Dr. Somers persisted in an ineffective course of treatment and prescribed Motrin and other hepatotoxic pain medications despite his hepatitis.  Id. at 26-27.

Dr. Somers discontinued Niemic's oxycodone prescription in August 2012, after he continued to request more pain medication and refused to entertain other treatment options without

additional pain medication.  Pl.'s Exhibits, Ex. P at 5.

Furthermore, Niemic's liver function tests are normal and his

hepatitis is well managed through chronic care appointments.

See Defs.' Undisputed Facts, Ex. J at 1, Ex. K at 1, Ex. S at 1.

As discussed above, without more, this Court declines to second-

guess medical decisions, Layne, 657 F.2d at 474, and a patient's

dissatisfaction or disagreement with a course of treatment is

insufficient to prove a deprivation sufficient to show

deliberate indifference, Ferranti, 618 F.2d at 891.  Thus, Dr.

Somers is entitled to judgment as matter of law.

### g.   Dr. Groblewski

Niemic claims that Dr. Groblewski, as the Director for

UMCH, failed to prevent or rectify the other Medical Defendants'

deliberate indifference to his medical needs.  Am. Compl. ¶ 148.

Niemic failed to brief this claim.  See Niemic's Mem.  As

director, Dr. Groblewski did not treat Niemic, nor did he make

Niemic's treatment decisions.  Defs.' Mem. 10. This Court thus

assumes that Dr. Groblewksi's liability must be premised on the

doctrine of supervisory liability.

"[A] supervisor is not liable for their subordinates'

unconstitutional conduct under the theory of respondeat

superior." Ramirez-Lluveras v. Pagan-Cruz, 833 F. Supp. 2d 165,

174 (D.P.R. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662

(2009)).  "Rather, supervisors may only be held liable under §

1983 on the basis of their own acts or omissions." Id.
(internal quotation marks omitted). To establish liability
under section 1983 two prongs must be satisfied: "(a) the
supervisor's subordinate must have violated the plaintiff's
constitutional rights; and (b) the supervisor's 'action or
inaction' must be 'affirmative[ly] link[ed] . . .' to that
behavior in the sense that it could be characterized as
'supervisory encouragement, condonation, or acquiescence' or
'gross negligence amounting to deliberate indifference.'" Id.
(alterations in original) (quoting Pineda v. Toomey, 533 F.3d
50, 54 (1st Cir. 2008)). In order to satisfy the second prong
of the test, a supervisor must knowingly disregard a
subordinate's risk of a constitutional violation, or create a
policy or environment that leads to violations. Id. (citing
McIntyre v. United States, 336 F. Supp. 2d 87, 127 (D. Mass.
2004) (Lindsay, J.)).

Niemic has failed to provide evidence showing a
deprivation sufficient to prove deliberate indifference of any
of the Medical Defendants. See Estelle, 429 U.S. at 106. In
Feeney v. Correctional Medical Services, Inc., the First Circuit
found allegations of Eighth Amendment violations insufficient
where the prisoner: 1) was examined by medical professionals
several times after reporting his symptoms; 2) had numerous
diagnostic tests performed; 3) was evaluated by outside

specialists; and 4) was given other treatments for his symptoms. Feeney, 464 F.3d at 162.  As discussed above, Niemic consistently has been provided with a variety of pain medications; he has been evaluated by outside specialists, including surgery and neurological evaluations; he has been treated with physical therapy; and he has been informed of and declined other pain management options.  See generally Defs.' Mem. Exs. A-T.  Additionally, Niemic has failed to provide evidence that Dr. Groblewski either affirmatively knew about his subordinates' alleged constitutional violations, nor is there evidence that he created policies or an environment that lead to such violations.  Thus, Dr. Groblewski is entitled to judgment as matter of law.

**C.   First and Fourteenth Amendment Violations**

Niemic alleges that the individual Medical Defendants' conduct violated the First Amendment and both the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Am. Compl. ¶¶ 150-59.

**1.   Due Process**

Over the course of the past several years, Niemic alleges that the Medical Defendants withheld his preferred pain medication and treatment programs in violation of the Due Process Clause of the Fourteenth Amendment.  Id.  The Due Process Clause of the Fourteenth Amendment states in relevant

part that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, cl. 1.  The Supreme Court has recognized that inmates are entitled to limited due process rights.  See Sandin v. Conner, 515 U.S. 472, 479 n.4 (1995).

"Inmates have a due process interest that is 'generally limited to freedom from restraint which . . . imposes atypical and significant hardship' on an inmate as compared to the 'ordinary incidents of prison life.'"  Niemic v. Maloney, 448 F. Supp. 2d 270, 280 (D. Mass. 2006) (Gorton, J.) (alteration in original) (quoting Sandin, 512 U.S. at 484).  Failure to receive one's preferred pain medication or treatment program is "neither related to freedom of restraint nor an 'atypical and significant hardship,'" id., especially in light of Niemic's disciplinary report history and his history of drug dependence.  Niemic's due process claims thus fail as matter of law.  See Celotex Corp., 477 U.S. at 322.

### 2.  Equal Protection

Niemic alleges that the Medical Defendants denied him access to Medication Assisted Treatment ("MAT") in violation of the Equal Protection Clause of the Fourteenth Amendment.  Am. Compl. ¶ 159.  The Equal Protection Clause states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, cl. 1.

"Equal protection means that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (quoting Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004)). In order to establish an equal protection violation, an inmate "must introduce sufficient evidence from which a jury reasonably could conclude that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration." Id. at 78.

Here, Niemic alleges that the Medical Defendants' failure to provide him with MAT when unincarcerated inmates have access to this treatment violates the Equal Protection Clause. Am. Compl. ¶ 106. Niemic, however, is not the only inmate who does not have access to MAT - in fact, no inmate in SBCC has access to MAT on a regular basis. Id. ¶¶ 106, 159. It is simply inapposite to compare the treatment options available to those who are not incarcerated with those who are incarcerated, as those two groups are not similarly situated and there are myriad reasons for the state to provide inmates with different care than the care non-prisoners may obtain of their own accord. Niemic's claim thus fails, and the Medical Defendants are entitled to judgment as matter of law.

### 3. First Amendment

Next, Niemic claims that the Medical Defendants delayed and

denied his medical treatment in retaliation for his complaints
and medical grievances.  Niemic's Mem. 30.  In order to prevail
on a First Amendment retaliation claim in the prison context,
Niemic must show: "1) that he engaged in constitutionally
protected conduct, 2) prison officials took adverse action
against him, 3) with the intent to retaliate against him for
engaging in the constitutionally protected conduct and 4) he
would not have suffered the adverse action 'but for' the prison
officials' retaliatory motive."  Schofield v. Clarke, 769 F.
Supp. 2d 42, 47 (D. Mass. 2011) (Gorton, J.).

Here, Niemic's conduct – filing complaints and grievances –
is constitutionally protected.  Id.  Yet he fails to provide
sufficient evidence showing that the Medical Defendants took
adverse action against him, nor has he established intent to
retaliate against him.  Niemic has merely established that he
was denied his preferred course of treatment.  His First
Amendment claims must fail as matter of law.

### D.   State Law Claim

Niemic alleges that the Medical Defendants interfered with
his constitutional rights in violation of Massachusetts General
Laws Chapter 12, Section 11I, the Massachusetts Civil Rights
Act.  Am. Compl. ¶ 150.

> To establish a claim under the MCRA, a plaintiff must
> prove 1) his exercise or enjoyment of his rights
> secured by the Constitution or the laws of either the

United States or the Commonwealth have been subjected
to interference or attempted interference by the
defendants and 2) that the interference or attempted
interference was by "threats, intimidation or
coercion."

Carroll v. City of Quincy, 441 F. Supp. 2d 215, 226 (D. Mass.

2006) (Gorton, J.) (quoting Bally v. Ne. Univ., 403 Mass. 713,

717 (1989)).  As discussed above, Niemic has failed to establish

retaliatory behavior, nor has he provided evidence of threats or

coercion.  As such, the Medical Defendants are entitled to

judgment as matter of law.

## III. CONCLUSION

For the aforementioned reasons, this Court GRANTS the

motion for summary judgment, ECF No. 134, in favor of the

Medical Defendants.

**SO ORDERED.**

_/s/ William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE